# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **NANCY PERKINS,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**TRUSTED CAPITAL HOMES LLC**, a Florida company, and **BENJAMIN TOAFF,** a Florida individual,<br><br>*Defendants,* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Nancy Perkins ("Plaintiff Perkins" or "Perkins") brings this Class Action Complaint and Demand for Jury Trial against Defendant Trusted Capital Homes LLC ("Defendant Trusted Capital Homes" or "TCH") and Defendant Benjamin Toaff ("Defendant Toaff" or "Toaff") to stop the Defendants from directing agents to violate the Telephone Consumer Protection Act by making pre-recorded telemarketing calls to consumers without consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Perkins, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Nancy Perkins is a resident of Orlando, Florida.

2. Defendant TCH is a Florida registered company headquartered in Miami, Florida. Defendant TCH conducts business throughout this District, and throughout Texas.

3. Defendant Benjamin Toaff is a resident of Miami, Florida and the owner of TCH.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5. This Court has personal jurisdiction over the Defendants because the Defendants are making calls into this District and the wrongful conduct giving rise to this case was directed into this District.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

11. According to online robocall tracking service "YouMail," 4.9 billion robocalls were placed in March 2021 alone, at a rate of 159.4 million per day. www.robocallindex.com (last visited April 6, 2021).

12. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

15. This case addresses a pervasive problem in the real estate industry: companies' incessant cold calls to consumers in violation of the Telephone Consumer Protection Act.

16. Defendant TCH purchases land and properties from consumers.[3]

17. Defendant Toaff is a real estate investor who owns companies such as Trust Capital Homes.

18. Toaff also owns and operates New Era Investments[4] and Nex-Gen Florida Realty,[5] both of which are used to purchase land and properties from consumers.

19. TCH through the direction of Toaff emplyes and trains his agents to make cold calls to prospective consumers to see if they are interested in selling their homes to TCH.

20. Toaff and TCH engage in using pre-recorded voice message calls, despite having never obtained the necessary consent required to place the calls.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.trustedcapitalhomes.com/our-company/
[4] https://www.newerarei.com/contact-us/
[5] https://www.nexgenflorida.com/

21. For example, in Plaintiff Perkins' case, the Defendants placed a pre-recorded call to Perkins' cell phone number despite the fact that Perkins never consented to receive such calls.

22. In response to these calls, Plaintiff Perkins files this lawsuit seeking injunctive relief requiring the Defendants to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

**TOAFF AND TCH DIRECT AGENTS TO MAKE COLD CALLS THAT INCLUDE PRE-RECORDED VOICE MESSAGE CALLS TO CONSUMERS**

23. A core component of TCH relies on cold calling to generate leads.

24. Toaff as the owner and trainer of TCH, trains his agents to make cold calls on his behalf on and on behalf of TCH.

25. For example, in December 2020, Toaff reveals on a video interview that he used cold callers to generate leads for his business: "I had 3 cold callers that were phenomenal. Just phenomenal! I still have them."[6]

26. Toaff goes on to explain that for his business "You need 3 cold callers for every agent."[7]

27. Toaff then goes on to discuss how important cold callers are to his team and how he personally directs his TCH agents to use the phone to generate business.[8]

28. In another video he explains "Now I have 7 cold callers. All my cold callers are female….my cold caller 'Hi this is Giselle, we were buying properties in your area were you considering selling your property?' "[9]

29. Giselle was the name of the cold caller that left a pre-recorded voicemail when calling Plaintiff's cell phone number.

---

[6] *Id.* – 23:43
[7]
[8] *Id.*
[9] https://www.instagram.com/p/CHSriZZDqmu/ [Giselle is the same name of the caller that left a pre-recorded call with the Plaintiff in this case.]

30. Upon information and belief, Toaff instructs his agents to leave pre-recorded voice messages when consumers do not answer calls from TCH and Toaff's other agents.

31. There are numerous complaints posted online about pre-recorded voice message calls that consumers received from Toaff and TCH including:



---

[10] https://directory.youmail.com/directory/phone/2819154983



32. On the aforementioned website, there are many transcribed recordings of pre-recorded voice message calls that consumers received from Toaff and TCH.

33. The above recording from 689-202-0028 is identical to the pre-recorded voice message that Plaintiff received on her cell phone voicemail from Defendants.

34. There are other complaints about calls consumers received from Toaff and TCH including:

- "They left a message in my cell voice mail about a cash offer for our house. They said they had looked up our property online and were interested in buying it. I think these are just phishers. My cell number is not attached to property records on line.... :-/"[12]
- "Got 2 missed calls rom this number don't know who this is the my phone didn't ring sick o the annoying scam calls and texts [I] am on the donot call list will block number"[13]
- "They just left me the same message about a cash offer for our house. We rent. Lol."[14]
- "property buyer also 281-915-4977"[15]
- "they called me today talking about some property taxes thing even though i'm literally 17 years old and still live at home"[16]

**PLAINTIFF PERKINS' ALLEGATIONS**

---

[11] https://directory.youmail.com/directory/phone/6892020028
[12] https://800notes.com/Phone.aspx/1-281-915-4983
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

35. Plaintiff Perkins' cell phone number is not associated with a business and is used for personal use only.

36. On December 4, 2020 at 4:49 PM, Plaintiff Perkins received a call from the Defendants using phone number 689-202-0028.

37. Plaintiff missed this call, but a pre-recorded voicemail message was left stating:

"Hi, this is Giselle. We just bought a property in your area and we looked up your house online. We're wondering if you would consider a cash offer. Please give us a call back at 689-202-0075. That was 689-202-0075. Thank you and look forward to hearing from you."

38. Consumers captured pre-recorded voicemails they received from Gisele featuring almost identical recordings to what Plaintiff received:



39. If 281-915-4977, the phone number referenced in the above screenshot is called, one will hear a recording of Defendant Toaff saying the following:

---
[17] https://directory.youmail.com/directory/phone/2819154983

"Hey, this is Ben with Trusted Capital. Please leave your name, number and the property address you were interested in selling and we'll get back to you as soon as possible. We appreciate your time. Thank you so much. Bye bye."

40. At no time did Plaintiff consent to receive pre-recorded or other telemarketing calls from Defendants.

41. The unauthorized pre-recorded call that Plaintiff received from Defendants have harmed Plaintiff Perkins in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

42. Seeking redress for these injuries, Plaintiff Perkins, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

43. Plaintiff Perkins brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant TCH called on behalf of Defendant Toaff (2) using a pre-recorded voice message, and (3) for whom the Defendants claim (a) they obtained prior express written consent in the same manner as Defendants claims they supposedly obtained prior express written consent to call Plaintiff, or (b) they obtained the person's number in the same manner as Defendants obtained Plaintiff's number.

44. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Perkins anticipates the need to amend the Class definitions following appropriate discovery.

45. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

46. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   (a) whether Defendant TCH and Toaff placed pre-recorded voice message calls to Plaintiff Perkins and members of the Pre-recorded Class without first obtaining consent to make the calls;

   (b) whether Toaff directed the calling conduct of TCH's agents;

   (c) whether TCH is vicariously liable for the calling conduct of its agents;

   (c) whether Defendants' conduct constitutes a violation of the TCPA;

   (d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

47. **Adequate Representation**: Plaintiff Perkins will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Perkins has no interests antagonistic to those of the Class, and Defendants has no defenses unique to Plaintiff. Plaintiff Perkins and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Perkins nor her counsel have any interest adverse to the Class.

48. **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Perkins.

Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
Telephone Consumer Protection Act
(Violation of 47 U.S.C. § 227)
(On Behalf of Plaintiff Perkins and the Pre-recorded No Consent Class)

49. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

50. Defendant TCH and Plaintiff Toaff transmitted unwanted telephone calls to Plaintiff Perkins and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

51. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Perkins and the other members of the Pre-recorded No Consent Class.

52. Toaff is liable for TCH's calls because he directed, apparently authorized, and/or ratified the agent's actions.

53. The Defendants have, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B). As a result of Defendants' conduct, Plaintiff Perkins and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**JURY DEMAND**

Plaintiff Perkins requests a jury trial.

**NANCY PERKINS**, individually and on behalf of all others similarly situated,

DATED this 6th day of April, 2021.

By: /s/ Stefan Coleman
Stefan Coleman (FL Bar No. 30188)
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Pat Peluso*
ppeluso@woodrowpeluso.com
WOODROW & PELUSO, LLC
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
Telephone: (720) 213-0675

*Attorneys for Plaintiff and the putative Class*

*Pro Hac Vice motion forthcoming